Filed 4/9/26  P. v. Hunter CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E087160 |
| v. | (Super.Ct.No. FWV25002401) |
| JOSHUA LAMAR HUNTER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Colin J. Bilash, Judge.  Dismissed.

Ariana D'Agostino, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

I.

INTRODUCTION

Pursuant to a negotiated disposition, defendant and appellant Joshua Hunter pled no contest to battery with injury on a peace officer (Pen. Code,[1] § 243, subd. (c)(2)).  In exchange, defendant was placed on formal probation for a period of two years on various terms and conditions of probation.  Defendant appeals from an order after judgment.  Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*), requesting this court to conduct an independent review of the record.  In addition, defendant has had an opportunity to file a supplemental brief with this court and has done so.  We conclude that because defendant waived his right to appeal under the plea agreement and did not obtain a certificate of probable cause, the appeal must be dismissed.

II.

FACTUAL AND PROCEDURAL BACKGROUND[2]

On July 4, 2025, defendant was taken to the Arrowhead Regional Medical Center by a family member after suffering three seizures and having an altered mental state.  The following day, defendant began hearing voices in his head.  He believed he was "Jesus" and heard his father speaking to him as "God."  He also thought the doctor in his room

---

[1] Unless otherwise stated, all future statutory references are to the Penal Code.

[2] A summary of the factual background is taken from the police report.  As part of defendant's plea, defendant stipulated a factual basis for the plea could be found in the police report.

was his son and that his mother was mopping the floor. Defendant later admitted he was experiencing severe hallucinations and that the voices in his head told him to leave the hospital.

The attending physician witnessed defendant's mental status suddenly escalate into aggression. Defendant began shouting at the medical staff, removed his electrocardiogram wires, left his hospital bed, and pushed a nurse to get out of the room. Deputy John Rojas, who ran towards the shouting, was confronted by defendant leaving his room. Deputy Rojas asked defendant to "get down" and drew his baton from his belt. Defendant then punched Deputy Rojas in the temple, causing the deputy to fall to the ground and experience blurred vision and dizziness. Defendant thereafter got on top of Deputy Rojas and continued to hit him. In response, Deputy Rojas hit defendant twice with his baton to get defendant off him. Deputy Rojas attempted to hit defendant in the torso, but the baton struck defendant in the head.

Deputy Garcia Avila witnessed the altercation and attempted to taser defendant seven times. One of the shots hit a nearby nurse in the leg, but on the seventh try, the taser made contact with defendant's body. Defendant received neuromuscular incapacitation from the taser and fell to the ground and hit the right side of his head. Deputy Avila ordered defendant to "stay down" and handcuffed him while he was incapacitated. Hospital staff immediately rendered medical assistance to defendant. Defendant received one suture from the hit on his head.

The attending physician ordered defendant sedated and intubated him for defendant's safety and for the safety of hospital staff. In an interview with police, the physician stated that defendant's mental state could have deteriorated regardless of the altercation. The physician admitted that defendant would have been intubated even if he had not been hit on the head due to his unpredictable mental state.

When defendant awoke from the sedation, he did not remember being unconscious, being hit on the head by the deputy's weapon, or being tased. Defendant expressed he felt "horrible" for attacking the officer. Defendant admitted that he knew it was wrong to attack the deputy but explained that he did not have control of himself.

On July 8, 2025, a felony complaint was filed alleging defendant committed battery with injury on a peace officer (§ 243, subd. (c)(2)). The complaint further alleged 18 aggravating factors pursuant to section 1170, subdivision (b)(2).

On August 6, 2025, the trial court screened defendant for mental health court and ordered a psychiatric evaluation.

On September 3, 2025, the trial court found defendant ineligible for mental health court. The court noted, "Based on the discussion with [defendant] that the [mental health] team had today, they did inform me he doesn't meet tier three criteria necessary for mental health court."[3]

On September 10, 2025, defendant pled no contest to committing a battery with injury on a peace officer (§ 243, subd. (c)(2)).

---

[3] The court's minute order notes the mental health team objected, but that objection is not noted in the reporter's transcript.

Prior to pleading no contest, defendant executed a plea form. In the plea form, defendant acknowledged his constitutional rights, agreed to waive his constitutional rights, and understood his constitutional rights and the consequences of the plea. He also signed and initialed the relevant portions of the plea form, including that he waived and gave up "any right to appeal from any motion [he] may have brought or could bring and from the conviction and judgment in [his] case since [he is] getting the benefit of [his] plea bargain." Defendant's attorney acknowledged that she had personally read and explained the contents of the plea form to defendant. The plea form was signed by the prosecutor and defendant's attorney. Thereafter, in open court, the trial court went over the plea form with defendant, the terms of the no contest plea, the consequences of the plea, and defendant's constitutional rights. Defendant acknowledged that he had initialed and signed the plea form and that he understood the plea agreement, the consequences of his plea, and his constitutional rights. Defendant also indicated that he had sufficient time to speak with his attorney about his case. After directly examining defendant, the court found that defendant understood his plea form, the nature of the charges, the consequences of pleading no contest, and his constitutional rights. The court also found that defendant's plea and waiver were knowingly, freely, intelligently, and voluntarily given and that there was a factual basis for the plea.

Immediately thereafter, the trial court sentenced defendant to formal probation for a period of two years on various terms and conditions of probation with 120 days credit

for time served.  Defendant indicate that he understood and agreed to the terms and conditions of his probation.  The balance of the complaint was dismissed.

Defendant timely appealed and did not request a certificate of probable cause.

III.

DISCUSSION

After defendant appealed, this court appointed counsel to represent him.  Upon examination of the record, counsel has filed a brief under the authority of *Wende*, *supra*, 25 Cal.3d 436 and *Anders*, *supra*, 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issues of whether there was a sufficient factual basis for the plea, whether trial counsel was ineffective when she did not petition for mental health diversion pursuant to section 1001.36, and whether the probation conditions ordered were constitutionally permissible.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so.  In his one-page supplemental brief, defendant asks this court to review the record and consider the following issues:  whether the trial court fully considered his medical and mental health circumstances and the possibility of diversion under section 1001.36 and whether all mitigating factors were properly considered at sentencing, including his medical condition at the time of the offense.

Defendant's failure to obtain a certificate of probable cause requires us to dismiss the appeal.  "[A] defendant who waives the right to appeal as part of a plea agreement must obtain a certificate of probable cause to appeal on any ground covered by the

6

waiver, regardless of whether the claim arose before or after the entry of the plea.  Absent such a certificate, the appellate court lacks authority under California Rules of Court, rule 8.304(b) to consider the claim because it is in substance a challenge to the validity of the appellate waiver, and therefore to the validity of the plea."  (*People v. Espinoza* (2018) 22 Cal.App.5th 794, 797 (*Espinoza*).)  Here, defendant's written waiver of his right to appeal "from any motion" he could have brought or could bring and from "the conviction" includes any issue we might uncover were we to conduct a *Wende* review of the record.  (See *People v. Panizzon* (1996) 13 Cal.4th 68, 80 [waiver of right to appeal "may be manifested either orally or in writing"].)

As *Espinoza* recognized, one consequence of its holding is that "the failure to obtain a certificate of probable cause will sometimes result in the dismissal of ' "potentially meritorious appeals" ' " (*Espinoza*, *supra*, 22 Cal.App.5th at p. 803), but that concern is lessened in *Wende* cases.  Here, we have a defendant who broadly waived his right to appeal; proceeded to appeal anyway without requesting a certificate of probable cause; obtained an appointed attorney who could not uncover any error in the proceedings below; and broadly identified two issues without any record citation or legal support.  Under these circumstances, we conclude that defendant's failure to obtain a certificate of probable cause requires us to enforce his appellate waiver against him.

## IV.

## DISPOSITION

The appeal is dismissed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____

J.

We concur:


MILLER _____

Acting P. J.


RAPHAEL _____

J.